UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

QUINTIENE D. CAMPBELL,

        Plaintiff,

v.

UNKNOWN SELLMIC et al.,

        Defendants.
_____/

Case No. 2:25-cv-200

Honorable Maarten Vermaat

**OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.7.)

    This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

    "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]however, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Tasson. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims for damages against Defendant Sellmic.

The following claims against Defendant Sellmic remain: (1) Plaintiff's personal capacity Eighth Amendment claim for damages and injunctive relief; and (2) Plaintiff's official capacity Eighth Amendment claim for injunctive relief.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

which he complains occurred at that facility. Plaintiff sues LFM Warden **Douglas Tasson** and LMF Psychiatrist **Unknown Sellmic** in their official and personal capacities. (Compl., ECF No. 1, PageID.2.)

In his complaint, Plaintiff sets forth that on December 7, 2024, he was "severely beaten in an attempted sexual assault by his bunkie." (*Id.*, PageID.3.) Plaintiff was subsequently placed in detention. (*Id.*) On December 12, 2024, Plaintiff went on a hunger strike "after several failed attempts to get medical or psych[] treatment." (*Id.*)

While on suicide protocol, Plaintiff had a video visit with an offsite psychiatrist, to whom Plaintiff "relayed all his symptoms." (*Id.*) About a day later, Plaintiff spoke to Defendant Sellmic, the onsite psychiatrist at LMF, and relayed his symptoms to Defendant Sellmic as well. (*Id.*) Plaintiff ended his hunger strike after "being allowed to see psych and medical." (*Id.*)

On December 17, 2024, Plaintiff saw Defendant Sellmic again before Plaintiff could "come of[f] suicide protocol." (*Id.*) Plaintiff told Defendant Sellmic that "he was no longer experiencing suicidal ideation, but was very much unable to sleep [because he was] suffering from profound depression, severe anxiety[, and] PTSD." (*Id.*) Plaintiff met with Defendant Sellmic at his cell door in general housing. (*Id.*) Plaintiff told Defendant Sellmic that speaking to her at that location would violate his right to confidentiality since his bunkie was in the cell. (*Id.*, PageID.3–4.)

Plaintiff submitted an urgent medical request on January 3, 2025. (*Id.*, PageID.4.) In that request, Plaintiff noted that he had been suffering from PTSD, paranoia, pathological anxiety, and major depression since December 7, 2024. (ECF No. 1-4, PageID.13.) Plaintiff indicated that he had been "having terrible flashbacks and [had] been sleep deprived." (*Id.*)

Plaintiff was called to the day room to speak to Defendant Sellmic on January 17, 2025. (Compl., ECF No. 1, PageID.4.) Plaintiff again told Defendant Sellmic about his symptoms and

4

"begged her for treatment." (*Id.*) Defendant Sellmic responded, "We have to investigate first." (*Id.*) Plaintiff contends that was the last day he spoke to Defendant Sellmic or any other qualified healthcare professional about his symptoms. (*Id.*)

Plaintiff submitted a grievance about the issue on January 22, 2025. (*Id.*) The grievance was denied on February 5, 2025, and Plaintiff appealed to Step II. (*Id.*) On February 14, 2025, Defendant Tasson denied Plaintiff's Step II grievance appeal. (*Id.*)

Plaintiff submitted another urgent healthcare request on March 9, 2025. (*Id.*, PageID.5.) He did not receive a response. (*Id.*) Plaintiff submitted a kite to Defendant Tasson on March 17, 2025, but did not receive a response. (*Id.*) Plaintiff subsequently submitted urgent medical requests on March 25, 2025, April 29, 2025, and June 2, 2025, but received no response. (*Id.*) On June 23, 2025, Plaintiff submitted a kite to Defendant Tasson regarding his serious medical needs not being met. (*Id.*) Plaintiff submitted another medical request on July 23, 2025, but received no response. (*Id.*)

Also on July 23, 2025, an offsite psychiatrist from Marquette met with Plaintiff "in the middle of Spruce Unit." (*Id.*, PageID.6.) The psychiatrist told Plaintiff that he was there at Defendant Sellmic's request and asked Plaintiff what was going on. (*Id.*) Plaintiff responded that he "had written a dozen urgent medical request[s] explaining his serious medical need[] and that he felt uncomfortable discussing his mental health issues in front of the [w]hole unit." (*Id.*) The psychiatrist stated that "he would go back and review those kites." (*Id.*)

Plaintiff avers that, as of July 27, 2025, he had not seen a qualified professional "to adequately discuss, evaluate, diagnose[,] and 'treat' him based on the agonizing mental health symptoms he had been suffering since the [brutal] beating and attempted rape he narrowly

5

survived." (*Id.*) Plaintiff contends that the lack of treatment has "compounded and aggrandized [his] injury with 7 months and going of w[a]nton and unnecessary pain." (*Id.*)

Based upon the foregoing, Plaintiff asserts Eighth Amendment claims premised upon deliberate indifference to his mental health needs. (*Id.*) The Court also construes Plaintiff's complaint to assert constitutional claims against Defendant Tasson regarding his handling of Plaintiff's grievance and kites. Plaintiff seeks $500,000.00 in compensatory damages, $250,000.00 in punitive damages, as well as injunctive relief in the form of an order directing Defendants to provide adequate psychological treatment. (*Id.*, PageID.7.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As set forth above, Plaintiff asserts Eighth Amendment clams premised upon deliberate indifference to his mental health needs, and the Court has construed Plaintiff's complaint to assert constitutional claims against Defendant Tasson regarding his handling of Plaintiff's grievance and kites.

### A.    Eighth Amendment Claims

The Eighth Amendment obligates prison authorities to provide medical care, including mental health care, to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702–03 (6th Cir. 2001). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock*, 273 F.3d at 702. Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and

9

considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at \*2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

        1.    **Objective Component**

As to the objective component, Plaintiff alleges that after the assault by his bunkie, he continued to experience a lack of sleep, "profound depression," severe anxiety, and PTSD. (Compl., ECF No. 1, PageID.3.) Plaintiff suggests that these symptoms have been ongoing for at least seven months. (*Id.*, PageID.6.) For purposes of this opinion, the Court will conclude that the

conditions that Plaintiff describes in his complaint satisfy the objective component of the relevant two-prong test.

### 2. Subjective Component

Turning to the subjective component—i.e., the requirement that a plaintiff alleges sufficient facts to show that "the official [or medical provider was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official or medical provider "also dr[e]w the inference," *Farmer*, 511 U.S. at 837—the Court addresses Plaintiff's allegations against each named Defendant below.

#### a. Defendant Tasson

It appears that Plaintiff seeks to hold Defendant Tasson liable because of his position as Warden of LMF. As an initial matter, administrative or custody officials such as Defendant Tasson, who have no training or authority to supervise healthcare officials, cannot be held liable for Defendant Sellmic's allegedly inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that a custody officer was entitled to rely on the medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials).

Moreover, to the extent Plaintiff seeks to hold Defendant Tasson liable because of his position as Warden, he fails to state such a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or

11

vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege facts suggesting that Defendant Tasson encouraged or condoned Defendant Sellmic's conduct, or authorized, approved, or knowingly acquiesced in that conduct. Instead, Plaintiff suggests only that Defendant Tasson denied his Step II grievance appeal and failed to respond to his kites. However, as set forth *supra*, supervisory liability cannot be based upon a mere failure to act, *see Grinter*, 532 F.3d at 576; *Greene*, 301 F.3d at 899; *Summers*, 368 F.3d at 888, nor can it be based upon Defendant Tasson's denial of Plaintiff's Step II grievance appeal, *see Shehee*, 199 F.3d at 300.

Accordingly, for the foregoing reasons, Plaintiff has failed to state an Eighth Amendment claim against Defendant Tasson, and the Court will dismiss that claim.

### b. Defendant Sellmic

With respect to Defendant Sellmic, Plaintiff essentially contends that she ignored Plaintiff's requests for mental heath care for approximately seven months. As set forth above, when Plaintiff spoke to Defendant Sellmic on January 17, 2025, Defendant Sellmic told Plaintiff, "We have to investigate first," after Plaintiff "begged for treatment." (Compl., ECF No. 1, PageID.4.) That was the last time Plaintiff had any interaction with Defendant Sellmic. (*Id.*) Moreover, while Defendant Sellmic sent an offsite psychiatrist to see Plaintiff on July 23, 2025, that individual did not provide treatment and instead indicated that he would go back and review the kites submitted by Plaintiff. (*Id.*, PageID.6.) Taking Plaintiff's allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's Eighth Amendment claim against Defendant Sellmic on initial review.

### B. Claims Regarding Plaintiff's Use of the Grievance Process

The Court has construed Plaintiff's complaint to assert constitutional claims against Defendant Tasson regarding his handling of Plaintiff's grievance and kites. These allegations, however, do not give rise to any constitutional claim.

Plaintiff has no due process right to file a prison grievance. The courts have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a

liberty interest in the grievance procedure. *See Olim,* 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the alleged conduct by Defendant Tasson could not have deprived Plaintiff of due process.

Additionally, Plaintiff's right to petition government is not violated by any failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, any actions by Defendant Tasson related to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977), *overruled*

14

*in other part by Lewis v. Casey*, 518 U.S. 343 (1996). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Accordingly, for each of the foregoing reasons, the Court will dismiss Plaintiff's claims regarding his use of the grievance process.

### C.    Official Capacity Claims

The Court has concluded that while Plaintiff's claims against Defendant Tasson are subject to dismissal, Plaintiff may proceed upon his Eighth Amendment claim against Defendant Sellmic. The Court must now consider whether Plaintiff can proceed on his official capacity claims against Defendant Sellmic as well.

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments, such as the MDOC, are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And,

15

regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff seeks monetary damages. (Compl., ECF No. 1, PageID.7.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendant Sellmic in her official capacity. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

Plaintiff also seeks injunctive relief in the form of an order directing that Plaintiff be provided "adequate psychological treatment." (Compl., ECF No. 1, PageID.7.) Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Virginia Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.") The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff's allegations against Defendant Sellmic suggest that the violation—Sellmic's failure to provide Plaintiff mental health treatment—is ongoing. Moreover, Plaintiff seeks relief that is properly characterized as

prospective. Put simply, Plaintiff's request for injunctive relief against Defendant Sellmic fits within the *Ex parte Young* exception. *See id.* Accordingly, while the Court will dismiss Plaintiff's official capacity claims for damages against Defendant Sellmic, Plaintiff's official capacity claims against Defendant Sellmic for injunctive relief will not be dismissed on initial review.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint against Defendant Tasson will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims for damages against Defendant Sellmic.

The following claims against Defendant Sellmic remain: (1) Plaintiff's personal capacity Eighth Amendment claim for damages and injunctive relief; and (2) Plaintiff's official capacity Eighth Amendment claim for injunctive relief.

An order consistent with this opinion will be entered.

Dated:   September 5, 2025                        /s/ *Maarten Vermaat*
                                                  Maarten Vermaat
                                                  United States Magistrate Judge